UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALBERT CHAFFEE and DEBORAH CHAFFEE,

                **Plaintiffs,**

     v.                                              5:04-CV-1493
                                                                        (FJS/GJD)

FARMERS NEW CENTURY INSURANCE
COMPANY,

                **Defendant.**
_____

**APPEARANCES**                                              **OF COUNSEL**

**OFFICE OF EDWARD E. KOPKO**              **EDWARD E. KOPKO, ESQ.**
15 Nottingham Drive
P.O. Box 130
Ithaca, New York 14850
Attorneys for Plaintiffs

**GOLDBERG SEGALLA LLP**                   **DANIEL W. GERBER, ESQ.**
665 Main Street, Suite 400
Buffalo, New York 14203
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiffs Albert and Deborah Chaffee brought this action against Defendant Farmers New Century Insurance Company under New York's contract law and its General Business Law § 349 in relation to a Homeowners Insurance Policy that Defendant sold to Plaintiffs. Plaintiffs contend that Defendant failed to satisfy its obligation under the policy and, therefore, breached

the contract between them and violated New York's General Business Law.[1] As a result, Plaintiffs contend that they have been damaged in an amount exceeding $150,000.

Currently before the Court are Defendant's motion to dismiss Plaintiffs' complaint and proposed amended complaint in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Plaintiffs' cross-motion for leave to amend their complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

## II. BACKGROUND[2]

Defendant is an insurance company licensed by the New York Department of Insurance to conduct the business of insurance in New York State and regularly does so in Tompkins County, New York.[3] Plaintiffs are residents of Tompkins County, New York.

On August 24, 2003, Plaintiffs entered into a Homeowners Insurance agreement (the "insurance agreement" or "contract") with Defendant.[4] Under the terms of the insurance agreement, Defendant agreed to pay Plaintiffs a certain amount of money, calculated in accord with the insurance agreement's terms, in the event of a loss to Plaintiffs' property.

---

[1] There was some initial confusion about whether Plaintiffs were bringing a "bad faith" claim against Defendant and whether Plaintiffs were seeking punitive damages. Plaintiffs, however, acknowledge that they are neither bringing a bad faith claim nor are they seeking punitive damages. *See* Plaintiffs' Memorandum of Law at 2.

[2] The background facts are not in dispute.

[3] Defendant is incorporated in and its principal place of business is in California.

[4] Homeowners Policy No. 92097-06-29

On December 28, 2003, Plaintiffs suffered a loss to their insured property.[5] Thereafter, they submitted a claim to Defendant for those losses. The parties failed to reach an agreement as to the actual value of Plaintiffs' claim. As a result, on December 28, 2004, Plaintiffs commenced this action against Defendant for breach of contract and for a violation of New York General Business Law § 349. On October 14, 2005, in response to Defendant's motion to dismiss, Plaintiffs sought leave to amend their complaint.

## II. DISCUSSION

**A.    Standards of Review**

*1. Leave to Amend*

Rule 15(a) requires that "leave [to amend] shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a). In this Circuit, a court should grant leave to amend unless the party seeking leave has acted in bad faith or the nonmoving party will be prejudiced by the amendment. *See Shade v. Hous. Auth. of City of New Haven*, No. 3:94-CV-00774, 1998 WL 351473, *1 (D. Conn. June 12, 1998) (citations omitted). However, "the Court shall not permit amendment where the new claim cannot withstand a motion to dismiss." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F. Supp. 732, 737 (S.D.N.Y. 1990) (citing *Forman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

Plaintiffs' proposed amended complaint contains claims for (1) breach of contract and (2) a General Business Law § 349 violation. Defendant does not argue that it would suffer

---

[5] Plaintiffs' pleadings do not indicate the nature of the loss.

prejudice from the timing of the proposed amendment, and there is none apparent. Moreover, Defendant does not allege that Plaintiffs are acting in bad faith. Against this backdrop, the Court will "consider the amended claims' ability to survive defendant's motion to dismiss dispositive of both the motion" and Plaintiff's cross-motion for leave to file an amended complaint.[6] *Id.*

### 2. Motion to Dismiss

Under Rule 12(b)(6), a court has authority to dismiss a complaint for failure to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, the court construes the pleadings in the light most favorable to the pleader and accepts all alleged facts as true. *See Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 347 (2d Cir. 2003) (citation omitted). Moreover, a court should only dismiss a complaint when "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quotation omitted). Nonetheless, a court should dismiss a complaint that "'consists of conclusory allegations unsupported by factual assertions . . . .'" *Americorp Fin., Inc. v. St. Joseph's Hosp. Health Ctr.*, 180 F. Supp. 2d 387, 390 (N.D.N.Y. 2001) (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)). Finally, when assessing the merits of a motion to dismiss, the court is limited to the facts stated in the complaint, "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which

---

[6] When a plaintiff files a motion for leave to amend his complaint in response to a defendant's motion to dismiss, the Court reviews the defendant's motion to dismiss against the plaintiff's proposed amended complaint.

-4-

plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted).

### B. Breach of Contract Claim

Under New York law, "to establish a claim for breach of contract, a plaintiff must prove the following elements: (1) the existence of a contract; (2) breach by the other party; and (3) damages suffered as a result of the breach." *Americorp Fin.*, 180 F. Supp. 2d at 390 (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000)). At the pleading stage, a "plaintiff must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." *Id.* (citation omitted).

In this case, although the existence of a contract between the parties is not in dispute, Plaintiffs' proposed amended complaint fails to provide Defendant with notice of the contractual provision(s) that it allegedly breached. Rather, Plaintiffs merely allege that "Farmers has breached the Homeowners Policy issued to Chaffee by refusing to pay the amounts due Chaffee under the terms of the policies." *See* Plaintiffs' Proposed Amended Complaint at ¶ 17. Without the required specifics, Plaintiffs' proposed amended complaint cannot withstand Defendant's motion to dismiss, and the Court could deny Plaintiffs' request for leave to amend their breach of contract claim on this ground alone. *See Riordan*, 756 F. Supp. at 737 (citation omitted).

Alternatively, the Court notes that Plaintiffs' proposed amendment to their breach of contract claim is deficient because the factual allegations supporting that claim are conclusory.

Plaintiffs simply assert that Defendant breached the contract by refusing to pay the amounts due Plaintiffs, by unreasonably delaying the review, evaluation, and adjustment of Plaintiffs' claim, by making misrepresentations regarding benefits, and by breaching various agreements with Plaintiffs. *See* Plaintiffs' Proposed Amended Complaint at ¶¶ 17-20. These conclusory allegations, unsupported by factual assertions, are insufficient to withstand Defendant's motion to dismiss and provide an alternative ground for the Court to deny Plaintiffs' motion for leave to amend this claim.[7]

Nonetheless, in light of the fact that the Court will grant Plaintiffs' motion for leave to amend their General Business Law § 349 claim, *see infra*, the Court will also allow Plaintiffs to amend their breach of contract claim, but not in the form that they propose. In this regard, the Court instructs Plaintiffs that, in any amended complaint that they file, they must allege the specific provision(s) of the insurance agreement that they claim Defendant breached and the specific damages that they suffered as a result of that breach.

---

[7] Although not required to do so given the conclusory nature of Plaintiffs' allegations, the Court has examined the actual insurance agreement to determine if there is any way to save Plaintiffs' proposed amendment. Although Plaintiffs did not attach the insurance agreement to their complaint, Defendant attached it as an exhibit to its motion to dismiss. *See* Dkt. No. 7. When a defendant attaches documents to its motion "of which plaintiff had knowledge and relied in bringing the suit," the court may properly consider those documents when determining a motion to dismiss. *Seneca Ins. Co. v. Kemper Ins. Co.*, No. 02 Civ. 10088, 2004 WL 1145830, *3 n.1 (S.D.N.Y. May 21, 2004); *cf. Cortec Indus., Inc., v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (noting that a plaintiff may not avoid consideration of documents integral to his complaint by failing to attach or incorporate them by reference and that a defendant may produce the documents when moving to dismiss (citation omitted)). In this case, the insurance agreement contains numerous provisions that set out in detail the coverage afforded and what incidents allow for compensation where the insured's property is damaged. Without some indication in Plaintiffs' proposed amended complaint concerning which provisions Defendant breached, the Court cannot determine whether Plaintiffs have stated a cognizable breach of contract claim.

## C.     General Business Law § 349 Claim

Under New York's General Business Law, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" are illegal. N.Y. Gen. Bus. Law § 349(a) (McKinney 1988). As a threshold matter, "a plaintiff must demonstrate that the § 349 claim implicates 'consumer oriented' conduct by the defendant." *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000) (citation omitted). In order to be considered consumer-oriented, the defendant's conduct must have "'"a broader impact on consumers at large . . . ."'" *Id.* (citation omitted). "Although this requirement has been construed fairly liberally, . . . 'private contract disputes unique to the parties . . . [do] not fall within the ambit of the statute." *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 330 (S.D.N.Y. 2002) (quoting *New York Univ.*, 87 N.Y.2d at 320, 639 N.Y.S.2d 283, 662 N.E.2d 763).

If a plaintiff can satisfy this threshold requirement, the plaintiff must then plead "'that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof.'" *Shapiro*, 212 F.3d at 126 (quotation omitted). New York law defines a "'deceptive act or practice' . . . as a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Id.* (quoting *Oswego Laborers'*, 623 N.Y.S.2d at 533, 647 N.E.2d 741).

As an initial matter, the Court must determine whether Defendant's alleged acts were consumer-oriented or directed at Plaintiffs alone. Plaintiffs allege that Defendant advertised, promoted and sold insurance policies "to the public at large [and represented] that these policies provide exceptional and enhanced insurance coverage and claim adjustment proceedings, thereby

lulling the consumers in the public at large with a sense of greater and comprehensive insurance protection." *See* Plaintiffs' Proposed Amended Complaint at ¶ 31. Moreover, Plaintiffs allege that Defendant sold these policies to the public at large and that these policies were "misleading . . . in that the policies contain contradictory, false, and misleading terms and provisions that permit Farmers to deny or delay insurance coverage rather than provide exceptional and enhanced insurance coverage . . . ." *See id.* at ¶ 36.

Although Plaintiffs' allegations are more general than specific, the Court finds that Plaintiffs allege sufficient facts to demonstrate that Defendant's conduct was consumer-oriented. In *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, *N.A.,* the New York Court of Appeals reasoned that the plaintiff satisfied the consumer-oriented threshold where

> defendant Bank dealt with plaintiffs' representative as any customer entering the bank to open a savings account, furnishing the Funds with standard documents presented to customers upon the opening of accounts. The account openings were not unique to these two parties, nor were they private in nature or a "'single shot transaction.'"

85 N.Y.2d 20, 26 (1995) (quotation omitted).

As with *Oswego Laborers' Local*, Plaintiffs do not allege that their insurance agreement with Defendant was a single shot transaction. Rather, they allege that Defendant misled them and the public by promoting deceptive and misleading insurance policies. Moreover, there is nothing in the record to suggest that the insurance agreement between Plaintiffs and Defendant was anything other than a standard insurance agreement and one which any member of the public

could have entered into with Defendant.[8]  Under Rule 12(b)(6)'s liberal pleading requirements, Plaintiffs have sufficiently alleged that Defendant's conduct had "''a broader impact on consumers at large . . . .'''" *Shapiro*, 212 F.3d at 126 (quotation omitted).

Having satisfied the threshold requirement to proceed on a § 349 claim, the Court must consider whether Defendant's alleged misrepresentations were material.  As previously noted, New York law defines a "'deceptive act or practice' . . . as a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Shapiro*, 212 F.3d at 126 (quoting *Oswego Laborers'*, 623 N.Y.S.2d at 533, 647 N.E.2d 741).  Plaintiffs have alleged, in essence, that Defendant lured them into purchasing this insurance agreement by promoting the policy as "exceptional and enhanced insurance coverage."  However, when it came time to enjoy the benefit of the policy, Plaintiffs discovered that it contained false and misleading terms.  Accepting Plaintiffs' facts as true, it appears that Plaintiffs are alleging that they bought Defendant's policy for the "exceptional and enhanced insurance coverage" but that they have not been able to benefit from the policy's protection because of Defendant's alleged protracted

---

[8] Defendant argues that Plaintiffs' allegations are conclusory and that the Court should dismiss their complaint as a result.  However, by alleging that the insurance agreement contained false and misleading terms, which contradicted Defendant's promotion of the policy, Plaintiffs have provided, although quite generally, facts to support an inference that Defendant's acts were deceptive.  Under Rule 12(b)(6), this is all that is required.

Moreover, Defendant's reliance on *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308 (1995), for the proposition that Plaintiffs' claim against Defendant does not fall within the ambit of § 349 is misguided.  In that case, the New York Court of Appeals distinguished *Oswego Laborers' Local*, holding that, because the insurance policy at issue was complex, was not a standard policy, and both sides had substantial bargaining power, the insurance policy was unique to the parties and therefore added up to a private contractual dispute.  *See id.* at 320-21.  This is not the case here.

campaign to deny or delay their claim which is due, in part, to false and misleading terms in the policy.[9] In light of these allegations, the Court finds that Plaintiffs have adequately pled materiality under § 349.

As to actual injury, Plaintiffs assert that Defendant's alleged misrepresentations have injured them and the public. Specifically, Plaintiffs allege that they have suffered actual injury because Defendant has not yet paid them for the damages to their home which, they contend, is covered under the insurance agreement, and that they have incurred substantial costs by retaining an attorney to pursue this claim. In essence, Plaintiffs assert that, because they bought the insurance agreement due to Defendant's alleged misrepresentations and later discovered false and misleading terms in the insurance agreement which have prevented them from receiving the benefit of the contract, they have been damaged. Having shown a causal connection between the alleged deceptive acts and the injury sustained, the Court finds that Plaintiffs have properly pled injury as a result of Defendant's misrepresentations.[10]

---

[9] Plaintiffs have alleged that, as a part of this campaign of delay, Defendant has "unreasonably demand[ed] duplicative information, and . . . unreasonably demand[ed] the submission of irrelevant information in support of a claim." *See* Plaintiffs' Proposed Amended Complaint at ¶ 37.

[10] Defendant asserts that within the insurance agreement is a provision that Plaintiffs will submit their insurance claims to an appraiser. Defendant, in essence, argues that the Court should not hear this claim until Plaintiffs have exhausted contractual remedies which provide for an appraisal process. In *Saterson*, the court considered a defendant's argument "that completion of the appraisal process is a condition precedent to filing suit." *Saterson v. Planet Ins. Co.*, No. 93 Civ. 6885, 1994 WL 689084, *5 (S.D.N.Y. Dec. 8, 1994). In rejecting this argument, the court noted that "[t]his is an inaccurate reading of the contract language, as interpreted by New York courts" and that the defendant incorrectly "equate[d] appraisal provisions with arbitration clauses." *Id.* Although the court held that it was inappropriate to grant either side summary judgment because both the plaintiffs and the defendant offered different views of their good faith efforts in proceeding with the appraisal process, the import of that case lies in the court's finding

(continued...)

Accordingly, the Court concludes that the allegations regarding the § 349 claim in Plaintiffs' proposed amended complaint are sufficient to withstand Defendant's motion to dismiss; and, thus, the Court grants Plaintiffs' motion to amend this claim as they propose.

### IV. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiffs' motion to amend their complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure is **GRANTED;**[11] and the Court further

---

[10](...continued)
that appraisal proceedings are not a condition precedent to filing a suit based upon a breach of an insurance agreement. In addition, Rule 12(b)(6) does not afford the parties an opportunity to litigate substantive questions of contract law or interpretation. *Cf. Fed. Home Loan Mortgage Corp. v. Portnoy*, No. 92 Civ. 0474, 1992 WL 320813, *3 (S.D.N.Y. Oct. 27, 1992) (holding that an interpretation of an appraisal clause raises factual issues that are inappropriate on a motion to dismiss). Accordingly, the Court rejects this argument.

Moreover, Defendant's reliance on *Ferrari v. Nw. Nat'l Ins. Co. of Milwaukee, Wisc.* support of its argument is misplaced. 224 A.D. 690 (4th Dep't 1928). The question in that case was waiver of appraisal proceedings, which is not an issue in this case. Moreover, the *Ferrari* holding is of little value because it too had the effect of treating an appraisal proceeding as the legal equivalent of an arbitration proceeding. In *Delmar Box Co.*, however, Judge Fuld explained the fundamental differences between the two proceedings and, relying on legislation passed in 1941, held that "the informal appraisal provided for by the standard fire policy [could not be converted] into an arbitration proceeding." *In the Matter of Delmar Box Co., Inc,* 309 N.Y. 60, 66 (1955).

[11] The Court notes that Plaintiffs' proposed amended complaint discussed throughout this decision is just that – a "proposed amended complaint." To avoid any confusion, the Court is not accepting this proposed amended complaint for filing. Rather, Plaintiffs must file an amended complaint consistent with the terms of this Order.

**ORDERS** that Plaintiffs shall file an amended complaint consistent with the terms of this Order **within thirty (30) days of the date of this Order**;[12] and the Court further

**ORDERS** that Defendant's motion to dismiss pursuant to Rule 12(b)(6) is **DENIED** without prejudice and with leave to renew after it has had an opportunity to review Plaintiffs' amended complaint.

**IT IS SO ORDERED.**

**Dated:** March 31, 2006
         Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[12] The Court advises Plaintiffs that their amended complaint, which shall supercede and replace in its entirety Plaintiffs' original complaint, must contain all claims that they wish the Court to consider as a basis for awarding them the relief that they seek. In other words, if Plaintiffs wish to pursue both their breach of contract claim and their General Business Law § 349 claim against Defendant, they must plead sufficient facts to support both of these claims in any amended complaint that they file in compliance with the terms of this Order.